IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GLORIA HORTON, AISHA HORTON,
as mother of TERREL PITCHFORD
and AKEELAH PITCHFORD, minors;
LETICIA HORTON, as mother of
KIERRA MOORE and SIERRA MOORE,
minors; TERRENCE HORTON, as
father of SHANIYA HORTON, a
minor,

                Plaintiffs,

     v.

CITY OF CHICAGO; CHICAGO
POLICE DEPARTMENT; OFFICER
JASON E. BROWN, Star #14562;
and UNKNOWN OFFICERS,

                Defendants.

Case No. 10 C 3968

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

For the reasons stated herein, the Court dismisses all unnamed officers from the case and grants summary judgment to the City on the *Monell* claim. Furthermore, the Court grants summary judgment in favor of Defendant Brown on Count III, and grants in part and denies in part his request for summary judgment on Count I.

## I.  BACKGROUND

On July 8, 2008, Defendant Officer Jason Brown ("Defendant Brown" or "Brown") (along with his confidential informant John Doe) applied for, and received, a warrant to search for a firearm

that Terrence Horton ("Terrence") allegedly kept at 1365 North Hudson Ave., Building 6A, Apt. #2108 ("the apartment"). The warrant application heading contains the correct address, as does the signed warrant. Throughout the supporting affidavit, however, the address is described as 1635 (not 1365) N. Hudson Ave. In his supporting affidavit, Defendant Brown explained his investigatory efforts, which included: taking Doe's report that he had seen Terrence Horton at the apartment with a gun in the last week; escorting Doe to the building and having him point out the apartment; verifying the address as one which Terrence had provided during a prior arrest; and confirming with the Marshall Fields housing complex that a family named Horton occupied the apartment.

Shortly after 11:00 p.m. on July 8, 2008, Defendant Brown and roughly 30 other officers broke down the apartment door and entered with guns drawn. (Defendant Brown concedes that there is a triable question as to whether he knocked and announced his presence before entering.) Brown avers that he holstered his weapon within one minute of entering the apartment, did not point it at anyone, and never wore a mask during the search.

Plaintiffs here are Gloria Horton ("Gloria"), a resident of the apartment, and her five grandchildren who were present for the search. (Terrence, the subject of the search warrant, is a Plaintiff as the father of Shaniya Horton, one of those

- 2 -

grandchildren.)  Several of the Plaintiff children hid under the table when officers broke through the door, and eventually were ordered to sit on a nearby couch during the search.  Two testified at deposition that a masked officer pointed a gun at them for a significant period of time during the search, but could not identify the officer.  It appears undisputed that no officers had physical contact with Gloria or her grandchildren. The two adults handcuffed during the search have not joined this action.

The search took roughly 90 minutes, and allegedly resulted in a broken headboard, television, and dresser drawers belonging to Gloria Horton.  Brown avers that he neither damaged property nor saw other officers do so; Gloria Horton cannot identify who did the damage.

During the search, an officer found a pellet gun inside the apartment, but no other guns.  After completing the search, the officers left the apartment.

## II.  LEGAL STANDARD

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable jury to find for the non-moving party, and material if it may affect the outcome of the suit. *Anderson v. Liberty Lobby,*

- 3 -

*Inc.*, 477 U.S. 242, 248 (1986). If the movant meets its burden, the non-movant must present facts showing a genuine dispute to avoid summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

Courts do not evaluate credibility or determine facts on summary judgment; they decide only whether there is enough evidence to send a case to trial. *Liberty Lobby*, 477 U.S. at 249. The Court construes all facts and draws all reasonable inferences in favor of the non-moving party. *Ricci v. DeStefano*, 129 S.Ct. 2658, 2677 (2009).

If a party asserts that a fact cannot be, or is genuinely disputed, it must support that assertion with citations to materials in the record. FED. R. CIV. P. 56(c)(1). Such cited materials must be served and filed. Local Rule 56.1. A court need only consider cited materials, but may consider the whole record. FED. R. CIV. P. 56(c)(3). If a party fails to support an assertion, the Court may consider the fact undisputed, grant summary judgment if the record supports it, or issue any other appropriate order. FED. R. CIV. P. 56(e).

## III.  <u>DISCUSSION</u>

Plaintiffs press several Fourth Amendment claims: that the warrant was invalid; that officers used excessive force in entering and searching the apartment; that Plaintiffs were unreasonably detained; and that officers damaged Gloria's

- 4 -

personal property. They also seek to impose *Monell* liability on the City for allegedly unconstitutional policies and practices.

Unfortunately, Plaintiffs have not complied with FED. R. CIV. P. 56 or Local Rule 56.1, in that their brief often provided only general citations, and they did not serve or file much of their supporting documentation. As discussed at greater length below, that failure makes summary judgment appropriate as to most of Plaintiffs' claims.

### A.  City's Motion for Summary Judgment

#### 1.  Unnamed Officers

The City seeks summary judgment on behalf of all unnamed officers in this case. Plaintiffs do not appear to have made any effort to discover and name additional officers. The Seventh Circuit has indicated that in circumstances like these, dismissal of the complaint as to the unnamed officers is appropriate. *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007). Accordingly, any unnamed defendants are dismissed from this action.

#### 2.  Monell Claim

Municipalities may not be held liable under § 1983 on a *respondeat superior* theory. *Monell v. N.Y. City Dept. of Soc. Servs.,* 436 U.S. 658, 694 (1978). Instead, a municipality's deliberate conduct must be the "moving force" behind the alleged

injury. *Bd. of Cnty. Com'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). Thus, a municipality may violate § 1983: (1) by enforcing an express policy that causes a constitutional deprivation; (2) through an unwritten but widespread and well-settled custom or practice; or (3) through the decisions of a person with final policymaking authority over the issue. *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Here, Plaintiffs pursue the second option, including a claim that police officers were inadequately trained. A *Monell* failure-to-train claim requires plaintiffs to show that not training officers on an issue amounted to deliberate indifference to the rights of people who interact with them. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

In their Complaint, Plaintiffs claim that the alleged Fourth Amendment violations arose because the City: failed to train officers in proper procedures for obtaining and executing search warrants; did not supervise officers enough to prevent constitutional violations; and maintained a discipline system that encourages constitutional violations. Compl. at ¶¶ 19-20. The City seeks summary judgment, arguing that Plaintiffs have identified no evidence (outside of this incident) of any City policy, custom, or practice. The City also argues that Plaintiffs have shown neither deliberate conduct nor a causal connection to the alleged injuries.

In response, Plaintiffs first object that the warrant was invalid, and that officers failed to knock and announce their presence before entering the apartment. As discussed below, the warrant was valid, and Defendant Brown concedes that knock-and-announce issue presents a factual question for trial. More importantly, however, Plaintiffs fail to distinguish between the actions of the officers and the policies of the City; if accepted, Plaintiffs' arguments would impose impermissible *respondeat superior* liability on the City. *Monell*, 436 U.S. at 694.

Next, Plaintiffs argue that they have satisfied *Monell* by identifying several written policies that the search team violated. However, without more, it does not follow that the City's true policy is to violate its written one. *See Woodward v. Corr. Med. Servs. Of Ill., Inc.*, 368 F.3d 917, 927-28 (7th Cir. 2004) (deviations from stated policy support *Monell* liability where the deviations constitute the *de facto* policy.)

Finally, Plaintiffs argue that they proved the City's deliberate indifference through the egregiousness of the alleged conduct, which is causally tied to the complained-of injury. However, Plaintiffs cannot convert *respondeat superior* liability into a *Monell* claim with one unsupported sentence in their reply that lax training and discipline caused the violations.

As discussed below, most of Plaintiffs' Fourth Amendment claims fail. Even where there is a fact question sufficient for trial (as with the knock and announce claim), Plaintiffs have offered no evidence to satisfy the "rigorous standard of causation" that *Monell* requires. *Connick v. Thompson*, 131 S.Ct. 1350, 1368 (2011)(Scalia, J. concurring). *Cf. Gilfand v. Planey*, No. 07 C 2566, 2011 WL 4036110, at *11 (N.D. Ill. September 09, 2011) (summary judgment denied where police practices expert studied City's disciplinary system to assess its effectiveness).

For their *Monell* claim to survive summary judgment, Plaintiffs had to do more than point to allegedly violated rules, unspecified parts of Gloria Horton's deposition, and the amount of § 1983 litigation against the City. Summary judgment is granted to the City on the *Monell* claim.

## B. Defendant Brown's Motion for Summary Judgment

### 1. *Count I*

Although Plaintiffs styled Count I as a Fifth Amendment Due Process claim, the parties seem to agree (as does this Court) that Fourth Amendment standards govern each claim. Plaintiffs allege four primary Fourth Amendment injuries: failing to knock and announce the police presence before breaking down the door; using excessive force in entering the apartment and searching the

premises; unreasonably detaining Plaintiffs; and conducting an unlawful search. Compl. ¶¶ 14-18.

Defendant Brown concedes that the knock-and-announce claim presents a genuine issue of material fact. However, he seeks summary judgment (either on the merits or on qualified immunity grounds) on each of Plaintiffs' remaining claims.

### a. *Warrant Validity*

A reasonably executed search pursuant to a valid search warrant generally will not violate the Fourth Amendment. To be valid, a search warrant must be supported by probable cause and particularly describe the place to be searched and things to be seized. *United States v. Aljabari*, 626 F.3d 940, 947 (7th Cir. 2010). The existence of probable cause is generally a fact question, but determining whether probable cause exists as a matter of law is appropriate if there is no room for a difference of opinion concerning the facts or their implications. *Horne v. Wheeler*, No. 03 C 7252, 2005 WL 2171151, at *5 (N.D. Ill. Sept. 6, 2005).

Plaintiffs argue that the errors in the warrant application rendered it invalid and entitle them to "a factual hearing" — though whether they mean a trial or a *Franks* hearing is unclear. Pls.' Resp. to Defs.' Mot. for Summ. J. 6. In either case, the Court disagrees.

A search warrant remains valid, despite an erroneous address in the application, if the correct address appears on the warrant face and the application contains ample other descriptions of the search location. *United States v. Jones*, 208 F.3d 603, 608 (7th Cir. 2000). Here, even though the affidavit consistently transposed numbers in the address, a reasonably diligent officer would have identified the correct apartment. The face of the search warrant identified the correct address, and the affidavit identified the building as part of the Marshall Fields housing complex. Within that complex, the building and apartment numbers were correct.

Given that all of his investigatory efforts pointed to 1365 N. Hudson, Brown's application gained nothing by introducing the errors into the warrant affidavit. There is no basis for inferring that Defendant Brown created the errors knowingly or recklessly. *Cf. Beauchamp v. City of Noblesville*, 320 F.3d 733, 742-43 (7th Cir. 2003). Even stripped of the erroneous addresses, the warrant contained probable cause to believe that Terrence Horton kept a firearm at the apartment shortly before the warrant was issued (whether or not he lived there, *see Horne*, 2005 WL 2171151, at *5). Accordingly, although the six transposition errors were not insignificant, the warrant was valid and summary judgment for Defendant Brown is appropriate on this claim.

- 10 -

Alternatively, the Court concludes that a reasonable officer in Brown's position would not have known that the errors invalidated the warrant, and Brown is entitled to qualified immunity. *See Reher v. Vivo*, 656 F.3d 772, 775 (7th Cir. 2011) (qualified immunity is appropriate if it would not have been clear to a reasonable officer that his conduct was unlawful under the circumstances).

### b.  *Excessive Force*

The Fourth Amendment prohibits officers from using excessive force during a search or seizure. *Jacobs v. City of Chicago,* 215 F.3d 758, 773 (7th Cir. 2000).  This includes a seizure that is otherwise authorized by a valid search warrant.  *Horne*, 2005 WL 2171151, at *6-7.  Force is excessive if it is greater than that reasonably necessary under the circumstances. *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009).

Plaintiffs allege that Defendants used "excessive force in entering the apartment and searching its occupants."  Compl. ¶ 17. Based on the pleadings, the Court construes this as a challenge to the officers' battering down the door; entering the apartment with weapons drawn; conducting the search with young children present when the apartment had been empty earlier; and one officer's allegedly pointing a gun at Plaintiffs during the search.

The Court concludes that whether it was reasonable to break down the door is intricately bound up with the admittedly contested issue of whether Brown knocked on the door and announced the presence of police. Accordingly, the Court will not grant summary judgment to Defendant Brown as to the decision to break down the door.

However, regarding Brown's entering the apartment with his weapon drawn, the Court concludes that summary judgment is appropriate. Plaintiffs offer no evidence to dispute Brown's affidavit statement that he holstered his gun within one minute of entering. The warrant application demonstrates that Brown believed that he was searching the apartment where a gang member kept his semiautomatic weapon. The Fourth Amendment does not preclude officers in such situations from entering with guns drawn. *Cf. Los Angeles County v. Rettele*, 550 U.S. 609, 614 (2007) (entering a room with guns drawn when the subject of a search warrant was believed to carry a weapon did not violate the Fourth Amendment); *Barron v. Sullivan*, No. 93 C 6644, 1997 WL 158321, at *5 (N.D. Ill. March 31, 1997). Alternatively, the Court concludes that a reasonable officer in Brown's position may not have known that entering with weapons drawn would violate the Fourth Amendment. Defendant Brown is therefore entitled to qualified immunity.

- 12 -

Two Plaintiff children testified at deposition that a masked officer pointed a gun at them during the search. This could ordinarily raise a triable issue of fact as to whether the force used in the search was excessive. *See Jacobs,* 215 F.3d at 774. As discussed above, however, no other officers are defendants here, and Plaintiffs evidently made no effort to determine what Defendant Brown personally did, knew of, or was responsible for. To be liable under § 1983, a defendant must be personally responsible for the deprivation of the constitutional right. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). That is, he must have either a directed the violative conduct, or known or consented to its occurrence. *Id*. Nothing in the record contradicts Defendant Brown's affidavit that he neither pointed a gun at Plaintiffs nor saw any other officer do so. Accordingly, summary judgment is appropriate.

Finally, in their opposition to summary judgment, Plaintiffs object that the search was unreasonable and excessively forceful because officers waited to force their way in until several children were present, even though the apartment had been unoccupied for several hours earlier. While the number and ages of the children present at the time of the search are indeed troubling, *see United States v. Jones*, 214 F.3d 836, 838 (7th Cir. 2000), Plaintiffs have identified no evidence that any officer (let alone Brown in particular) knew that children were

present when they executed the search warrant. Without further development of this claim, it cannot protect Plaintiffs from summary judgment.

### c.  Reasonableness of Detention

A valid warrant to search for contraband carries with it a "limited authority to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers,* 452 U.S. 692, 705 (1981). However, the length and manner of detention must be reasonable. *Horne v. Wheeler*, 2005 WL 2171151, at *7.

In their Complaint, Plaintiffs object that they were detained and deprived of their personal liberty for roughly 90 minutes during the search.  It is undisputed that the officers left after completing the search.  Because this was a search warrant, and not merely an arrest warrant, a 90 minute detention is not unconstitutionally unreasonable. *See Los Angeles Cnty. v. Rettele,* 550 U.S. 609, 614 (2007) (discussing searches upheld where detention was 2 to 3 hours).  The other allegation of unreasonable detention — that one or more officers allegedly pointed a gun at Plaintiffs — was addressed above.  Accordingly, the Court concludes that summary judgment in favor of Defendant Brown is appropriate as to the length of detention. Alternatively, in light of *Rettele*, the Court finds that a reasonable officer in Brown's position would not have known that

his conduct violated the Constitution; Brown is therefore entitled to qualified immunity on the length of detention claim.

### d. Damage to Personal Property

In the deposition excerpt provided by Defendants, Gloria Horton testified that some of her property was damaged during the search, including her television, headboard, and several dresser drawers.

As noted above, Brown can only be liable under § 1983 for his own conduct or the conduct of others that he knew of and/or consented to. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Once again, Plaintiffs made no effort to contradict Brown's affidavit, in which he avers that he neither damaged any property in the apartment, nor saw any other officer do so. Instead of offering any contrary evidence that would raise an inference that Defendant Brown knew of the property damage, Plaintiffs rely on a *respondeat superior*-like assertion that Brown is liable because he obtained the warrant, planned the search, and participated in it. This is insufficient to create a triable question of fact, and the Court concludes that summary judgment is appropriate on the issue of whether Defendant Brown damaged Plaintiffs' personal property.

### 2. Count III

Plaintiffs concede that Count III (for freestanding punitive damages) is not a viable independent claim against Defendant

- 15 -

Brown. Accordingly, summary judgment is granted to Defendant Brown on Count III.

### IV. CONCLUSION

For the reasons stated herein, the Court rules as follows:

1. Dismisses all unnamed officers from the case;

2. Grants summary judgment to the City on the *Monell* claim;

3. Grants summary judgment to Defendant Brown on Count III;

4. Grants summary judgment to Defendant Brown on the following allegations in Count I: (a) unreasonable search pursuant to an invalid warrant; (b) unreasonable detention; (c) excessive force; and (d) property damage.

As noted above, whether Defendant Brown knocked on the door and announced the police presence prior to breaking down the door, and whether breaking it down was reasonable under the circumstances, remain to be determined at trial.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:**      February 3, 2012